Richard **KENASTON**

v.

**SCHOOL ADMINISTRATIVE DISTRICT #40.**

Supreme Judicial Court of Maine.

March 20, 1974.

**8**

Locke, Campbell & Chapman by Frank G. Chapman, Augusta, for plaintiff.

Strout, Adams, Payson & Pellicani by Joseph B. Pellicani, Rockland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

We are required by this appeal, it being before us properly, to review conclusions reached by a Justice of the Superior Court in a jury-waived trial.

The appeal is by the defendant, against which a judgment was entered in the amount of $10,200.00 for an alleged breach of a school teacher contract.

The plaintiff is a certified teacher, holding a Master's Degree and was in 1970 the holder of a tenure contract.

On July 30, 1969, he entered into a contract labeled, "Probationary Teachers Employment Contract Third Year," as a teacher for the school year beginning September 1, 1969, and ending August 31, 1970.

The contract provided for the payment of $8,700.00 in 26 instalments. On August 14, 1969, he entered into a second contract with School Administrative District # 40 which contract bore the title, "Extra Duty, Responsibility and Compensation Agreement." This contract recited that the Board of Directors of School Administrative District #40 agreed to employ Richard Kenaston and Richard Kenaston agreed to serve the Board of Directors and the Superintendent of Schools as Principal in Prescott Memorial School. This agreement was for a school year beginning September 1, 1969, and ending August 31, 1970.

For this service plaintiff was to receive and did receive the sum of $700.00.

On June 16, 1970, he entered into an agreement labeled,

### "TEACHER'S CONTINUING CONTRACT

(Effective beginning with the 4th year of continuous employment)"

This agreement read in part as follows:

"The Superintending School Committee or School Directors of the administrative unit of M.S.A.D. # 40 Waldoboro, Maine, hereby agrees to employ Richard Kenaston and Richard Kenaston hereby agrees to serve, under the direction of the Superintending School Committee or School Directors and the Superintendent of Schools as a Teacher-Principal at Prescott Memorial School, Washington in the public schools of said unit for a period not less than two nor more than five years beginning September 1, 1970, and ending August 31, 1972.

"The salary of said teacher is fixed at $10,000.00 per annum for the school year 1970–71, and thereafter, . . . ."

On May 4, 1971, the Superintendent of Schools sent a letter which was received by the plaintiff which read as follows:

"May 4, 1971

Mr. Richard Kenaston
R.F.D. # 2
Union, Maine 04862

Dear Mr. Kenaston:

At a meeting of the Board of Directors of S.A.D. # 40, April 12, 1971, the Di-

rectors voted to discontinue the Teaching Principalship at the Prescott Memorial School effective September 1, 1971. Further at the same meeting, the Board voted not to offer you a teaching position in Special Education in S.A.D. # 40.

Very truly yours,

s/ Mario A. Tonon
Mario A. Tonon
Superintendent of Schools"

The record reveals that at a meeting of the Board of Directors of School Administrative District # 40, held April 12, 1971, the Directors voted "to discontinue the teaching principalships at Friendship Village and Prescott Memorial and the supervising principalship at Union."

Ten Directors voted in favor of such discontinuance, one was opposed and one abstained from voting.

The record shows that it was moved and seconded "to offer Mr. Kenaston a teaching position in special education in School Administrative District # 40."

One Director made a statement which he requested be entered on the record. The statement recited that the Director was opposed to rehiring Mr. Kenaston. He then made allegations which are no place in the record supported by evidence, constituting a serious attack on the plaintiff's integrity.

A vote then followed in which four Directors voted in favor of rehiring plaintiff and six voted against rehiring. Two Directors abstained from voting.

Ultimately this action was brought alleging that the failure to rehire constituted a breach of contract.

The defendant answered, pleading as an affirmative defense,

"That the position of teacher-principal at Prescott Memorial School in Washington was dissolved as a result of changes in local conditions which warranted elimination of the same. That Plaintiff was seasonably notified that the contract dated June 16, 1970 and referred to in the complaint was being terminated in accordance with 20 M.R.S.A. 161(5)."

20 M.R.S.A. 161(5) to which defendant referred in its answer contains provision that,

"The right to terminate a contract, after due notice of 90 days, is reserved to the superintending school committee or school directors when changes in local conditions warrant the elimination of the teaching position for which the contract was made."

■ Here the teaching position for which the contract was made was not eliminated. The plaintiff was replaced by another teacher who performed exactly the same teaching duties formerly performed by plaintiff in the same place. All that was done by the School Directors was to eliminate the extra duty as principal for which, in previous years, there had been a separate contract.

■ The only evidence in the record on the subject compelled the conclusion which was obviously reached by the Justice below: that failure to rehire the plaintiff in the *teaching position* was not authorized by the provisions of 20 M.R.S.A. 161(5).

That section makes express provision that after the probationary period, not to exceed three years, subsequent contracts of duly certified teachers shall be for not less than two years.

The statute also provides that except where the teaching position has been eliminated because of changes in local conditions which warrant such action, a teacher holding tenure may be dismissed only when such teacher has been proved "unfit to teach or whose services they (the Directors) deem unprofitable to the school." 20 M.R.S.A. 473(4)

Dismissal for these reasons under the law of Maine, may result only "after in-

vestigation, due notice of hearing and hearing thereon." 20 M.R.S.A. 473(4).

As this Court said in Hopkins v. Inhabitants of Bucksport, 119 Me. 437, 111 A. 734 (1920):

"The authority given to the committee to vacate a contract, being an authority given to those who represent one party only, must be strictly pursued according to the provisions of the statute, to have that effect." 119 Me. at 440, 111 A. at 735.

See also Benson v. Town of Newfield, 136 Me. 23, 1 A.2d 227 (1938).

Here there was no investigation, due notice of hearing, nor any hearing thereon.

Despite the fact the minutes of the April 12, 1971, meeting of the Board of Directors of School Administrative District # 40 clearly disclose that at least one Director had concluded that plaintiff was "unfit to teach," the defendant in its answer and at the hearing did not even attempt to justify dismissal on this ground.

We conclude that not only is there sufficient evidence to support the finding of the Justice below that there was a breach of contract by the defendant, but we conclude such finding was the *only* conclusion which could be reached on the evidence before him.

The defendant urges that we conclude the damages assessed were excessive and that we order a new trial be had for that reason.

The claim of excessive damages is premised on its view that the damages resulting from the breach of contract must be mitigated by what the plaintiff earned or might have earned by the use of reasonable diligence during the remainder of the term of the contract which was breached.

Sutherland v. Wyer, 67 Me. 64 (1877), is cited as authority for defendant's position. There our Court said at page 69:

"Although, as practically construed by the parties, the salary was payable weekly, still, when the plaintiff was peremptorily discharged from all further service during the remainder of the season, such discharge conferred upon him the right to treat the contract as entirely at an end, and to bring his action to recover damages for the breach. In such action he is entitled to a just recompense for the actual injury sustained by the illegal discharge. *Prima facie,* such recompense would be the stipulated wages for the remaining eighteen weeks. This, however, would not necessarily be the sum which he would be entitled to; for in cases of contract as well as of tort, it is generally incumbent upon an injured party to do whatever he reasonably can, and to improve all reasonable and proper opportunities to lessen the injury. Miller v. Mariners' Church, 7 Maine, 51, 56. Jones v. Jones, 4 Md. 609. 2 Greenl. Ev. § 261, and notes. Chamberlin v. Morgan, 68 Pa.St., 168. Sedg. on Dam. (6th Ed.) 416, 417, cases *supra.* The plaintiff could not be justified in lying idle after the breach; but he was bound to use ordinary diligence in securing employment elsewhere, during the remainder of the term; and whatever sum he actually earned or might have earned by the use of reasonable diligence, should be deducted from the amount of the unpaid stipulated wages."

A teacher whose contract has been unjustifiably terminated is not required to accept employment which would be of an inferior or different kind or in a different location in order to mitigate damages. Zeller v. Prior Lake Pub. Schools, Ind. Sch. Dist. No. 719, 259 Minn. 487, 108 N. W.2d 602, 89 A.L.R.2d 1012 (1961).[1]

1. For collection of cases of like effect involving teachers see 22 A.L.R.3d 1047 at 1059. See also Williams et al. v. National Organization of Masters, Mates and Pilots of America, Local #2, 384 Pa. 413, 120 A.2d 896 (1956), where the same rule was applied to Masters and Mates on sea duty.

It is likewise clear that mitigation of damages is an affirmative defense and the burden of showing mitigation is entirely on the employer. Crosby v. Plummer, 111 Me. 355, 89 A. 145 (1913); Isenman v. Burnell, 125 Me. 57, 130 A. 868 (1925); Martin v. Board of Education of Lincoln County, 120 W.Va. 621, 199 S.E. 887 (1938).

In the case before us it is conceded the plaintiff made no effort to obtain other teaching employment in the area or elsewhere.

The Secretary of the Maine Teachers Association, Dr. Marvin, testified from records which were maintained by the Maine Teachers Association that no teaching positions were available within a reasonable area of School Administrative District # 40 for one holding a Master's Degree with at least 10 years teaching experience. The Superintendent of School Administrative District # 40 testified that no teaching positions existed in School Administrative District # 40 during the 1971–1972 school year. Under the circumstances we think the Justice below was justified in concluding, as he obviously did, that the defendant had not sustained the burden of showing entitlement to mitigation of damages.

The figure of $10,200 as the amount of salary which the plaintiff would have received for the school year 1971–1972, had the Directors not wrongfully terminated his contract, was based on figures shown in the Maine Teachers Association records admitted into evidence without objection.

We find no reversible error in the judgment entered either as to the liability of the defendant or as to damages.

The entry must be,

Appeal denied.

All Justices concurring.