2000 ME 58

**Daniel SARGENT et al.**

v.

**TOMHEGAN CAMPS OWNERS
ASSOCIATION**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 28, 2000.
Decided April 4, 2000.

Wm. Thomas Hyde, Merrill, Hyde, For-
tier & Youney, P.A., Skowhegan, for plain-
tiffs.

Anthony P. Shusta II, Madison, for de-
fendant.

Before WATHEN, C.J., and
CLIFFORD, RUDMAN, DANA,
SAUFLEY, ALEXANDER, and
CALKINS, JJ.

CALKINS, J.

[¶ 1] Tomhegan Camps Owners Association (TCOA) appeals the judgment of the Superior Court (Somerset County, *Kravchuk, C.J.*), affirming the judgment of the District Court (Skowhegan, *Clapp, J.*). TCOA contends that the court erred in finding that Daniel and Carol Sargent suffered a loss resulting from TCOA's breach of their employment contract. The trial court found that Daniel and Carol Sargent had an employment contract with TCOA which TCOA breached. TCOA has not appealed the court's findings that there was a contract or that it was breached. The only issue on appeal is whether the Sargents have proven damages. We modify the judgment.

## I. FACTS

[¶ 2] TCOA is a camp association consisting of a set of sporting camps and a lodge located on Moosehead Lake, ten miles from Rockwood, in Somerset County. The Sargents, a married couple, were hired by TCOA to work as caretakers and managers. One of the cabins was provided to them as a residence. They worked for TCOA from January 1, 1995, until June 1995, when they were evicted from the cabin at Tomhegan in which they were residing. The trial court found: "The contract did not require that the Sargents live on the premises, but the provision of living arrangements in the manager's cabin, the nature of their duties, and the remoteness of the facility made it impossible to perform without them being resident." The trial court found that the eviction was a breach of the employment contract.

[¶ 3] By July 18, 1995, approximately two weeks after the employment contract was terminated, the Sargents had moved from Tomhegan. On that date, Daniel Sargent began employment at a lumber company in Livermore Falls, and by the end of that month, Carol Sargent had also found new employment. The trial court found that the combined income of the Sargents from their new jobs exceeded the compensation of $375 weekly that they would have been paid under the employment contract with TCOA.[1] The court concluded that the amount owed under the TCOA contract to the Sargents should not be reduced because of the earnings from the Sargents' new jobs. The court stated: "The contract did not prohibit the Sargents from outside employment during its pendency and it should not somehow become a material issue after [TCOA's] breach."

[¶ 4] The court found that the contractual term of employment expired on November 30, 1995, and that the Sargents were paid by TCOA for their services through June 30, 1995. The court awarded damages to the Sargents, for TCOA's breach of the employment contract, in the amount of $8,062.50, calculated at $375 per week for the period from July 1, 1995, through November 30, 1995.

## II. STANDARD OF REVIEW

[¶ 5] When the Superior Court acts as an intermediate appellate court, we review the decision of the trial court directly. *See Department of Human Serv. v. Sabattus*, 683 A.2d 170, 171 (Me.1996). We review findings of fact of the trial court for clear error, and we uphold the trial court's findings unless there is no evidence to support them. *See Sturtevant v. Town of Winthrop*, 1999 ME 84, ¶ 9, 732 A.2d 264, 267.

## III. DAMAGES

[¶ 6] It is the rule in Maine, and the majority of jurisdictions, that the measure

---

1. Daniel Sargent testified that he started his new job as a millwright at a lumber company in Livermore Falls earning $8.50 per hour, working fifty to fifty-five hours per week. This equals $425 to $468 weekly. He testified that his wife began working at a supermarket earning over $5.00 per hour, working twenty hours per week. From July 18, 1995, through November 30, 1995. Daniel Sargent would have earned $8075 working 50 hours per week at $8.50 per hour.

of damages from an employer's breach of an employment contract is the amount of wages that would be due the employee under the contract, less any amount of wages actually earned by the employee or that could have been earned by reasonable diligence. *See State Dev. Office v. State Employees Appeals Bd.*, 363 A.2d 688, 691 (Me.1976) (holding that wrongfully discharged state employee did not abandon his claim for back pay and reinstatement by taking interim job); *Sutherland v. Wyer*, 67 Me. 64, 69 (1877) (requiring deduction of actual wages earned during contract term by discharged plaintiff); *Mason County Bd. of Educ. v. State Superintendent of Sch.*, 170 W.Va. 632, 295 S.E.2d 719 (1982) (adopting the majority rule that terminated employees have a duty to mitigate damages).

[¶ 7] This general rule is modified in the situation where the employee could have held the new job while still working at the first employment. We noted that:

> when an employee who has been discharged in breach of an employment contract can find other similar employment in the same community, the wages which were earned, or could have been earned, in the similar employment, should be deducted from the employee's recovery only if the taking of the second job would not have been possible if employment under the first contract continued; if the employee could have performed both jobs there should be no reduction in the damages recovered from the defaulting party for the wages which were earned or could have been earned.

*Lisbon Sch. Comm. v. Lisbon Educ. Ass'n*, 438 A.2d 239, 244 n. 5 (Me.1981) (quoting 22 Am. Jur. 2d *Damages* § 34 (1965)).

[¶ 8] Another jurisdiction has stated the proposition as follows:

The theory underlying a suit for back salary is to make the employee whole— to compensate him to the extent that the wrongful deprivation of salary has resulted in financial loss. For that reason the amount recoverable is to be reduced by his other earnings during the period of separation insofar as such income would have been incompatible with performance of his duties to his erring employer.

*People ex rel. Bourne v. Johnson*, 32 Ill.2d 324, 205 N.E.2d 470, 473 (1965). In the *Bourne* case, for a substantial period of time before the employee was fired from his civil service position, he held a second job, working nights. The court concluded that because the two jobs were not incompatible, the employee should not be penalized by allowing the breaching employer a deduction for the earnings from the night job.

[¶ 9] Here, the trial court found, and the fact was not disputed, that by the end of July 1995, the Sargents were earning more from their new employment than the remuneration to which they were entitled under the contract with TCOA. In light of their earnings from their new jobs, it would be possible for the Sargents to recover the entire amount of wages due them under the TCOA contract only if they were able to demonstrate that they could have earned their new wages while still performing the TCOA contract.

[¶ 10] The Sargents had the burden of proving that they were damaged by the breach of contract. *See Dairy Farm Leasing Co., Inc. v. Hartley*, 395 A.2d 1135, 1140–41 (Me.1978). The burden of proving a failure to mitigate damages or a failure to avoid consequences is on a defendant, *see Kenaston v. School Admin. Dist. # 40*, 317 A.2d 7, 11 (Me.1974), and TCOA met that burden by proving the actual earnings of the Sargents following the discharge.[2] The Sargents did not present

---

2. At the close of the Sargents' case, TCOA moved for judgment on the grounds that the Sargents failed to prove damages. The Sar-

gents did not argue that the new and old employments were compatible. Instead, they argued that they were owed two weeks worth

any evidence to demonstrate that their new employment was compatible with the TCOA work, that is, that they could have worked at their new jobs in Livermore Falls, which is approximately 120 miles from Rockwood, and still fulfill their responsibilities under the TCOA contract. Thus, the court was unable to make a finding of compatibility of the new jobs with the TCOA contract. The Sargents demonstrated that the TCOA contract did not prohibit them from other employment, but that proof only allowed the court to find that the contract was not exclusive. The lack of any proof on compatibility, combined with the court's finding that the remoteness of the Tomhegan location made it impossible for the Sargents to perform the TCOA job without residing there, requires our conclusion that the Sargents failed to prove their entitlement to the amount of damages awarded by the District Court.

[¶ 11] Neither party has addressed specifically the issue of the Sargents' entitlement to damages for the two-week period of time before Daniel Sargent obtained new employment. In the absence of argument on this issue we find no reason to disturb the court's award of damages for that period of time.

The entry is:

Case remanded to the Superior Court with instructions to remand to the District Court for the entry of judgment for the plaintiffs in the amount of $750, and as so modified, the judgment is affirmed.

of contract damages for the two weeks they were out of work and they were owed "quality of life" damages because living and working on a lake shore is better than working in a lumber mill. The court took the motion under advisement and, by previous agreement of the parties, the evidentiary record remained open to allow the parties to take the deposition of a TCOA witness.